UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MUTHUKUMAR NACHIAPPAAN SUBBIAH, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-1131-B |
| L. DOUGLAS KIEL, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant L. Douglas Kiel's Motion to Dismiss Pursuant to Rule 12(b)(6) (doc. 33), filed January 1, 2011. For the reasons stated below, the Court finds that the Motion should be and hereby is **GRANTED** and that Plaintiff's claims should be and hereby are **DISMISSED with prejudice**.

## I.

## BACKGROUND

Similar to his suit against the University of Texas at Dallas ("UTD"), this action also arises out of Plaintiff Nachiappan Subbiah Muthukumar's graduate studies and employment as a teaching assistant with the University of Texas at Dallas ("UTD"). More particularly, this suit involves Plaintiff's relationship with one of his professors, Defendant L. Douglas Kiel ("Kiel"), a professor in UTD's Public Affairs program within the School of Management. (Pl.'s Ex Parte Emergency Filing

1-2 (doc. 1-13)).[1]  Plaintiff alleges that while he was a doctoral candidate in the Public Affairs program, Kiel was his dissertation chair, charged with guiding his dissertation.  (*Id.*).  Instead of helping him, however, Plaintiff contends that Kiel in fact prevented him from getting necessary data, guided him in the wrong direction, purposefully did not offer him financial aid, and obstructed those who were helping Plaintiff with data collection.  (*Id.* at 2).  Plaintiff further alleges that Kiel advertised five teaching assistant positions, but gave them to other students, stating that funding prevented him from also offering Plaintiff a position.  (*Id.* at 1-2).  He additionally maintains that Kiel would not respond to his emails after he filed a complaint with the provost in connection with his claims against UTD and that Kiel spread rumors around and intimidated other professors, further harming Plaintiff's dissertation as well as any potential letters of recommendation.  (*Id.* at 2).

Based on these allegations, and when construed in the broadest light, Plaintiff brings claims against Kiel for harassment, retaliation, and hostile work/academic environment under Title VII and Title VII, violation of his constitutional and statutroy rights under 42 U.S.C. § 1983, and violations of Texas tort and contract laws.  (*See generally* Pl.'s Original Compl. 2-10).  Because Plaintiff asserts violations of Title VII, the genesis of the procedural history in this suit actually arose when he pursued certain administrative precursors with the Equal Opportunity Commission ("EEOC") in the Fall of 2009.  While Plaintiff has not provided copies of the EEOC filings relevant to his Title VII claims in the papers before the Court in this case, he did include his August 24, 2009 Intake Questionnaire and November 4, 2009 Charge, alleging that UTD and certain professors had

---

[1] Plaintiff's Ex Parte Emergency Filing from state court (doc. 1-13) provides the most detailed and comprehensive account of the factual allegations underlying Plaintiff's suit against Kiel.  Out of an abundance of caution, the Court has chosen to examine these facts in consideration of the adequacy of Plaintiff's claims.

discriminated against him on the basis of his national origin (Indian) and retaliated against him for using the internal grievance procedure. (Pl.'s Original Compl. 2-6, *Muthukumar v. Univ. of Tex. at Dallas*, No. 03:10-CV-115-B).

After receiving a right to sue letter from the EEOC, Plaintiff filed the instant case on March 12, 2010. (*Id.* at 7; *see generally* Pl.'s Original Pet.). His Original Petition consisted of one paragraph of factual allegations and legal claims, as well as several pieces of email correspondence. Kiel properly removed the case to this Court on June 7, 2010 (doc. 1) on the basis of federal question jurisdiction. On September 3, 2010, Kiel filed a Motion to Dismiss under Rule 12(c) of the Federal Rules of Civil Procedure (doc. 10), arguing that Plaintiff had failed to state a claim upon which relief could be granted. After that briefing was ripe, but before the Court could issue a ruling, Plaintiff filed a Motion for Leave to File an Amended Complaint (doc. 23). Because *pro se* plaintiffs should ordinarily be afforded at least one opportunity to amend, particularly in the face of a motion to dismiss that is likely to be granted, the Court granted Plaintiff's request (doc. 31). The Court simultaneously denied Kiel's Motion to Dismiss without prejudice to his refiling a similar motion after Plaintiff filed an amended complaint. The Clerk entered Plaintiff's amended Complaint (which Plaintiff styled "Plaintiff's Original Complaint and Jury Demand") on December 27, 2010 (doc. 32). This pleading alleges the host of claims under Title VII, Title VI, § 1983, and Texas tort and contract law delineated above. Kiel has once again filed a Motion to Dismiss (doc. 33), arguing that Plaintiff's Amended Complaint still fails to state a claim upon which relief may be granted under Rule 12(b)(6). Plaintiff has filed a Response (doc. 38), and Kiel has not filed a Reply.

Also relevant to the present disposition of this case is the procedural posture of Plaintiff's suit against UTD, and particularly the evolution of his Complaint in that case. There, Plaintiff originally

filed suit on January 22, 2010. (Pl.'s Original Compl. 1, *Muthukumar v. Univ. of Tex. at Dallas*, No. 03:10-CV-115-B). After the Court consolidated a parallel proceeding removed from state court,[2] Plaintiff sought and obtained leave to file an amended complaint. This First Amended Complaint either referenced or alleged violations of Title VII, Title VI, and certain state tort and contract laws. (Pl.'s 1st Am. Compl. 5-9, *Muthukumar v. Univ. of Tex. at Dallas*, No. 03:10-CV-115-B). UTD moved to dismiss all of these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff had failed to state a claim upon which relief could possibly be granted. On December 27, 2010, the Court issued a Memorandum Opinion and Order, granting Defendant's Motion to Dismiss, yet giving Plaintiff one final opportunity to amend his claims. Plaintiff complied with the Court's Order, filing his Second Amended Complaint on January 21, 2011. Plaintiff again realleged his claims for discrimination and retaliation under Title VII, discrimination and retaliation under Title VI, violations of state tort law, and breach of contract. (Pl.'s 2d Am. Compl. 5-9, *Muthukumar v. Univ. of Tex. at Dallas*, No. 03:10-CV-115-B). He also brought new claims for purported violations of constitutional rights. (*Id.* at 9-10). Defendant once again moved to dismiss the entirety of Plaintiff's claims under Rule 12(b)(6). The Court again found that Plaintiff had failed to adequately plead any of his causes of action and dismissed all of Plaintiff's claims with prejudice.

## II.

## LEGAL STANDARD

The same pleading standards govern Plaintiff's claims against Kiel as they do those against

---

[2] Plaintiff commenced a similar action against UTD in state court on March 12, 2010. (Pl.'s Original Pet. 1 (doc. 1-4), *Muthukumar v. Univ. of Tex. at Dallas*, No: 3:10-CV-1133-B). After UTD removed that case to federal court, the Court consolidated it with the original federal case. (Order of Consolidation (doc. 3), *Muthukumar v. Univ. of Tex. at Dallas*, No: 3:10-CV-1133-B).

UTD. Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not wurvive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285,

288 (5th Cir. 2004).

Because Plaintiff is proceeding *pro se*, the Court liberally construes his Complaint with all possible deference. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* plaintiff ordinarily should be given "every opportunity" to state a possible claim for relief. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1998). Thus, before a court dismisses a complaint under Rule 12(b)(6) for failure to state a claim, a *pro se* plaintiff should be given an opportunity to amend. *Barowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam).

## III.

## ANALYSIS

A.   *Plaintiff's Title VII Claims*

Plaintiff's Title VII claims against Kiel are based on the latter's alleged harassment of Plaintiff, his alleged creation of a hostile work environment by means of that harassment, and his alleged retaliation against Plaintiff for some unknown reason (presumably Plaintiff's following the internal grievance procedure in protesting his grades). (Pl.'s Original Comp. 3-6). Kiel has moved to dismiss Plaintiff's Title VII claims on the grounds that Kiel was not Plaintiff's "employer" under Title VII, that Plaintiff's claims are time-barred, and that Kiel was not named as the Respondent in Plaintiff's EEOC charge. (Def.'s Br. in Supp. of Mot. Dismiss 3-5). Plaintiff responds that Kiel was his "employer" for purposes of Title VII, that his claims are not time-barred, and that Kiel did not need to be named as the Respondent in his EEOC charge. (Pl.'s Br. in Supp. of Resp. 1-4). The Court finds that dismissal is proper on the basis of Plaintiff's claims being time-barred and thus does not separately consider the other bases for dismissal of the Title VII claims.

A plaintiff may only bring a Title VII claim in federal court after he has exhausted his

administrative remedies before the EEOC. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). This means that before he files suit, a plaintiff must "file[] a timely charge with the EEOC and receive[] a statutory notice of right to sue." *Id.* (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)). While the Court is dubious whether Plaintiff filed a timely charge with the EEOC,[3] it need not examine that issue because Plaintiff has clearly failed to satisfy the timeliness requirements connected to his receipt of notice of his right to sue. A plaintiff suing under Title VII must bring his claims within ninety days of receipt of a right-to-sue letter from the EEOC. *Berry v. CIGNA/RSI-CIGNA*, 935 F.2d 1188, 1191 (5th Cir. 1992) (citing 42 U.S.C. § 2000e 5(f)). When the date upon which a right-to-sue letter is "unknown or disputed," the Fifth Circuit has created a presumption that a complainant receives his right-to-sue notice within seven days after the notice is mailed, giving a complainant ninety-seven days in which to file suit. *Taylor*, 296 F.3d at 380. The requirement that a plaintiff must bring suit within ninety days of receipt of the right-to-sue notice is "strictly construed," and claims that do not comply with that requirement should be dismissed. *Id.* at 379.

In the instant case, the EEOC mailed Plaintiff his right-to-sue notice on November 4, 2009. (*See* Pl.'s Original Compl. 7, *Muthukumar v. Univ. Tex. At Dallas*, No. 3:10-CV-115-B). Plaintiff filed his suit against Kiel in state court on March 12, 2010. (*See* Pl.'s Original Pet. 1). Ninety-seven days from the date the EEOC mailed Plaintiff's right-to-sue notice would have been February 9, 2010, over a month before Plaintiff did in fact file suit. Therefore, his Title VII claims must be dismissed.

---

[3]See the Court's discussion of the dismissal of Plaintiff's Title VII claims against UTD in the Court's December 27, 2010 Memorandum Opinion & Order (doc. 60) and most recent Memorandum Opinion & Order (doc. 64).

The Court notes, as Kiel points out in his Motion, that the Fifth Circuit has affirmed the dismissal of some cases where the lapse in time was much shorter. *See, e.g.*, *Taylor*, 296 F.3d 379-80 (affirming dismissal of claims where suit was filed merely one day late). Plaintiff's only response is that the ninety-day limit "only applies to the organization, rather than the individual." (Pl.'s Br. in Supp. of Resp. 1). However, he does not support this assertion with any case law, and the Court sees no reasons not to strictly construe the Fifth Circuit's ninety-day requirement. Accordingly, Plaintiff's Title VII claims against Kiel are hereby **DISMISSED**.

      B.      *Plaintiff's Title VI Claims*

Plaintiff also brings harassment, hostile work environment, hostile academic environment, and retaliation claims against Kiel under Title VI. (Pl.'s Original Compl. 2-6). Kiel moves to dismiss these claims on the grounds that Title VI only imposes liability on public and private entities, not individuals like himself, and because Plaintiff has failed to plead sufficient facts to support a Title VI claim. (Def.'s Br. in Supp. of Mot. Dismiss 5-7). Plaintiff responds that he has pled sufficient facts to state a Title VI claim, but acknowledges that Kiel is "probably" right about there being no individual liability under Title VI. (Pl.'s Br. in Supp. of Resp. 4). Nevertheless, Plaintiff still requests that the Court "determine this issue based on its experience," as "lawyers often file cases under the wrong law and courts sua sponte note the right law." (*Id.*).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. As Kiel correctly notes, the proper defendant in a Title VI case is a public or private entity receiving federal financial assistance, not an individual. *See Price v. La. Dep't of Educ.*, 329 F. App'x

559, 561 (5th Cir. 2009) (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003)). Accordingly, Plaintiff cannot bring suit against Kiel under Title VI, those claims are **DISMISSED**, and the Court does not examine the parties' arguments concerning the factual sufficiency of Plaintiff's amended Original Complaint.

C. *Plaintiff's § 1983 Claims*

Plaintiff claims that Kiel's purported violations of Title VII and Title VI likewise give rise to a cause of action under 42 U.S.C. § 1983. (Pl.'s Original Compl. 2-3). Kiel moves to dismiss any § 1983 claim on the grounds that Plaintiff has failed to plead sufficient facts to support his § 1983 claims and that Kiel is entitled to both official and qualified immunity. (Def.'s Br. in Supp. of Mot. Dismiss 7-9). Plaintiff responds that he has adequately pled violations of his rights under Title VII and Title VI. The Court finds that dismissal of Plaintiff's § 1983 claims is warranted, but on grounds separate and apart from those discussed by the parties.

A claim under 42 U.S.C. § 1983 is not a cause of action in itself—instead it is merely a remedy for some other constitutional or statutory violation. *Segura v. Tex. Dep't of Human Servs.*, No. SA00CA0229OG, 2001 WL 681748, at *6 n.56 (W.D. Tex. Feb. 14, 2001) ("Section 1983 . . . does not in itself provide a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere."). The only statutory or constitutional claims Plaintiff brings in his amended Complaint are violations of Title VII and Title VI. (*See generally* Pl.'s Original Compl.). Indeed, Plaintiff explicitly states that "[c]ounts one through three are [f]ederal claims under Title VI and VII of the Civil Rights Act of 1964 and under 42 U.S.C. [§] 1983 . . . ." (*Id.* at 2). He further explains the dependency of his § 1983 claims on his Title VII and Title VI claims: "The critical criterion for bringing a claim under 1983 is to state a valid cause of action. All counts

brought herein are proper causes of action, and hence permit redress under 1983)." (*Id.* at 3).[4] Because the Court has already found that Plaintiff cannot possibly state a claim under either Title VII or Title VI, his § 1983 claims based on those purported violations necessarily fail as well. *See Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) ("[A plaintiff] may not circumvent Title VII's filing requirements by utilizing § 1983 as the vehicle for asserting his Title VII claim."). Accordingly, Plaintiff's § 1983 claims are likewise **DISMISSED**.

D.  *Plaintiff's State Law Tort Claims*

Plaintiff brings several causes of action based on Texas tort law: tortious interference with contract, intentional infliction of emotional distress, defamation, and breach of fiduciary duty. (Pl.'s Original Compl. 6-10).[5] Kiel moves to dismiss each of these claims, arguing that Plaintiff has already elected to sue UTD under the Texas Tort Claims Act and because Kiel is also immune to suit. (Def.'s Br. in Supp. of Mot. Dismiss 9-14). Plaintiff responds that he has not sued UTD under the Texas Tort Claims Act and that immunity does not apply for several reasons. (Pl.'s Br. in Supp. of Resp. 5-7). Because the Court finds that dismissal is warranted based on Plaintiff's election to first sue UTD under the Texas Tort Claims Act, it does not examine whether Kiel enjoys sovereign

---

[4]While Plaintiff references "all counts," a § 1983 claim cannot be based on a violation of state tort law or breach of contract. *Villegas v. Galloway*, No. H-10-2906, 2010 WL 4607836, at *3 (S.D. Tex. Nov. 4, 2010) (citing *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir. 1983)). The only other counts in Plaintiff's amended Complaint are violations of Title VII and Title VI.

[5]Plaintiff also brings claims for "breach of implied in fact contract" and "contort." (Pl.'s Original Compl. 8-9). The breach of contract claim is dealt with separately below. Plaintiff alleges that "[c]ontorts occur when relationships are governed by the law, not merely by the contract . . . [i]n other words[,] a tort occurs along with the breach of contract." (*Id.* at 9). There is no independent cause of action for contort under Texas law. Instead, the term merely refers to situations where it is difficult to ascertain whether a plaintiff's claims sound in tort or in contract. *See Morris v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 873 n.15 (Tex. App.–San Antonio 1997, no writ).

immunity from Plaintiff's tort claims.

Despite Plaintiff's contentions to the contrary, his tort claims against UTD and Kiel are brought under the Texas Tort Claims Act. The State of Texas, its agencies, and subdivisions generally enjoy sovereign immunity from tort liability. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). A state-funded university like UTD is considered a state agent for sovereign immunity purposes. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). The Tort Claims Act provides the "only, albeit limited" means of recovery against the government under Texas tort law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).[6] Under the Tort Claims Act, the only tort claims not barred by sovereign immunity are those that involve "the use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." TEX. CIV. PRAC. & REM. CODE § 101.021.

After the Tort Claims Act was first enacted, plaintiffs began to avoid its limitations by suing governmental employees who were not always subject to the same limitations. *Garcia*, 253 S.W.3d at 656. In order to prevent this "circumvention" of the Tort Claims Act, the Texas legislature enacted an "election-of-remedies" provision, which now reads, "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter. *Id.*; TEX. CIV. PRAC. & REM. CODE

---

[6]The Court in *Garcia* definitively dispelled any notion that Plaintiff did not elect to sue UTD under the Texas Tort Claims Act, as he argues in his Response. *See Garcia*, 253 S.W.3d at 659 ("Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of § 101.106." (citing *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997))).

§ 101.106(a). This provision is designed "to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defendant redundant litigation and alternative theories of recovery. *Garcia*, 253 S.W.3d at 656 (footnote omitted). This "narrows the issues for trial and reduces delay and duplicative litigation costs." *Id.*

On January 22, 2010, Plaintiff brought suit against UTD, alleging claims of conspiracy, negligence per se, fraud by nondisclosure, intentional infliction of emotional distress, loss of consortium, and defamation per se. (*See* Pl.'s Original Compl. 1 & Pl.'s 2d Am. Compl. 8, *Muthukumar v. Univ. Tex. at Dallas*, No. 3:10-CV-115-B). Plaintiff did not bring the instant suit against Kiel until March 12, 2010, claiming tortious interference with contract, intentional infliction of emotional distress, defamation, and breach of fiduciary duty. (*See* Pl.'s Original Compl. 6-10). Thus, because Plaintiff chose to pursue his tort claims against UTD first, he has made "an irrevocable election" and is barred from also bringing suit against Kiel, so long as those claims "regard[] the same subject matter." *See* TEX. CIV. PRAC. & REM. CODE § 101.106(a).

A suit against an individual "regard[s] the same subject matter" as a suit against an entity when the two suits "aris[e] out of the same actions, transactions, or occurrences." *Estate of Shane G. Sorrells v. City of Dallas*, No. 01-10610, 2002 WL 1899592, at *4 (5th Cir. 2002) (quoting *Dallas Cnty. Mental Health & Retardation v. Bossley*, 968 S.W.2d 339, 344 (Tex. 1998)). Plaintiff's multiple complaints filed in both the instant action and his suit against UTD demonstrate that his claims against both defendants arise out of the same actions, transactions, and occurrences—they deal with Plaintiff's status as a student at UTD, the facts underlying his transfer from one department to

another, and the treatment he received once he began the new program.

Because the Court finds that Plaintiff filed his state-law tort claims against UTD before his tort claims against Kiel and that the claims against both Defendants arise out of the same actions, transactions, and occurrences, it therefore concludes that his tort claims against Kiel should be **DISMISSED**.

E.  *Plaintiff's Breach of Contract Claim*

Finally, Plaintiff also brings a claim for breach of implied in fact contract. (Pl.'s Original Compl. 8). Kiel urges the dismissal of this claim, maintaining that Plaintiff has not adequately pled a claim for breach of contract, and, even if he had, the claim would still be barred by sovereign immunity. (Def.'s Br. in Supp. of Mot. Dismiss 14-15). Plaintiff responds that he has entered an implied in fact contract but does not address Kiel's immunity arguments. (Pl.'s Br. in Supp. of Resp. 7-9). Because the Court finds dismissal warranted on the inadequacy of Plaintiff's pleadings, it does not consider the merits of Kiel's immunity arguments with respect to this claim.

To succeed on a breach of contract claim under Texas law, a plaintiff must demonstrate "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003) (citing *Palmer v. Espey Hous. & Assocs.*, 84 S.W.3d 345, 353 (Tex. App.–Corpus Christi 2002, pet. denied)). While most contracts are recorded in a written instrument, an implied in fact contract arises from the actions and conduct of the parties. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Notley v. Sterling Bank*, No. 05-07-00891-CV, 2008 WL 4952835, at *3 (Tex. App.–Dallas Nov. 21, 2008, no pet.).

However, merely stating that an implied contract exists is not enough to survive dismissal under Rule 12(b)(6); instead, a plaintiff must allege a sufficient factual basis for the existence of the contract that "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While Plaintiff's amended Complaint is wholly devoid of any factual detail concerning what action and conduct gave rise to the parties' implied contract, he does allege in his Response that "[b]y agreeing to be the dissertation chair[,] Kiel agreed to help me complete my dissertation . . . [and] . . . had a duty to provide me with constructive comments[,] facilitate the full blooming of my potential[, and] to help me produce a dissertation of high quality." (Pl.'s Br. in Supp. of Resp. 8). However, nowhere does he point to any facts that would go to the requisite elements for the formation of a contract: an offer, acceptance in strict compliance with the terms of the offer, a meeting of the minds, each party's mutual assent to the terms, execution and delivery with the intent that it become mutual and binding, and consideration. *See In re Astro Air, L.P.*, No. 12-10-00108-CV, 2010 WL 3582657, at *3 (Tex. App.–Tyler Sept. 15, 2010, pet. denied) (listing the above elements); *Izen v. Comm'n for Lawyer Discipline*, 322 S.W.3d 308, 318 (Tex. App.–Houston [1st Dist.] 2010, pet. denied) (listing each of the above elements—except consideration—as necessary for formation of an implied contract); *Discovery Operating, Inc. v. Baskin*, 855 S.W2d 884, 887 (Tex. App.–El Paso 1993, no writ) (including consideration as a requisite element for the formation of an implied contract). Instead of pointing to any particular actions or conduct, he merely provides the conclusory allegation that "it is clear that an implied in fact contract existed." (Pl.'s Br. in Supp. of Resp. 8).

Because Plaintiff has failed to plead any factual allegations to support his claims for breach of implied in fact contract, those claims are **DISMISSED** as well.

IV.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is hereby **GRANTED** and all of Plaintiff's claims are **DISMISSED**. Furthermore, Plaintiffs claims are **DISMISSED with prejudice** because the Court has already given him an opportunity to amend in this case and several opportunities to amend his similar claims against UTD. *See Moini v. Univ. Tex. at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *13 (W.D. Tex. Jan. 10, 2011); *Swanson v. Aegis Commc'ns Group, Inc.*, No. 3:09-CV-041-D, 2010 WL 1779664, at *1 (N.D. Tex. Apr. 29, 2010); *Maa v. Rollins-Cross*, No. 3:03-CV-2721-K, 2005 WL 81706, at *2 (N.D. Tex. Jan. 11, 2005). Furthermore, any future amendment to Plaintiff's Complaint would be futile, as he is procedurally barred from bring his Title VII, Title VI, and tort law claims against Kiel, and he could not bring any set of facts that would adequately support his fanciful breach of contract claims against his dissertation chair. To the extent Plaintiff's Notice Regarding Emergency Relief (doc. 43) may be construed as a third request for emergency relief, such Motion is **DENIED**.

**SO ORDERED.**

DATED May 10, 2011

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE